UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LUIS VELARDE, individually and for all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MAJOR DRILLING AMERICA, INC., <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [21] DEFENDANT'S MOTION TO DISMISS** <br><br> Case No. 2:26-cv-00138-DBB-CMR <br><br> District Judge David Barlow |

Before the court is Defendant Major Drilling America, Inc.'s ("Major Drilling") Motion to Dismiss.[1] Major Drilling seeks dismissal of Plaintiff Luis Velarde's claims for unpaid wages brought under the Fair Labor Standards Act ("FLSA"), the Minnesota Payment of Wages Act ("MPWA"), and the Minnesota Fair Labor Standards Act ("MFLSA").[2] For the reasons below, the court grants in part and denies in part Major Drilling's motion.

**BACKGROUND**

Major Drilling provides specialized drilling services in the mining and metals industry and operates in various states, including Utah, Arizona, and Minnesota.[3] Mr. Velarde has worked for Major Drilling as an hourly employee in Utah "since approximately January 2025, in Wyoming from approximately September 2024 to January 2025, in Arizona from approximately

---

[1] Def.'s Mot. to Dismiss ("Mot."), ECF No. 21, filed Apr. 2, 2026.
[2] *See generally* Pl.'s Compl. ("Compl."), ECF No. 1, filed Feb. 17, 2026.
[3] Mot. 3.

June 2024 to September 2024, and in Minnesota from approximately February to June 2024."[4]

Mr. Velarde alleges that Major Drilling does[5] not pay him for all hours worked, including overtime hours.[6] Specifically, he contends that Major Drilling requires him to perform pre-shift work off-the-clock that is integral and indispensable to his duties, and that Major Drilling engages in regular-rate violations through its per diem payments, rounding policy, and exclusion of nondiscretionary bonuses from overtime calculations.[7]

Mr. Velarde filed this action against Major Drilling, asserting a claim under the FLSA for its alleged failure to pay for overtime hours worked.[8] Mr. Velarde seeks to certify his claim as a collective action for all other hourly employees similarly situated.[9] He also asserts three claims under Minnesota statutes, the MPWA and the MFLSA, alleging that Major Drilling failed to pay wages and overtime under those statutes.[10] Mr. Velarde seeks to certify a class action for those claims on behalf of other Minnesota hourly employees of Major Drilling.[11]

### STANDARD

Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted.[12] Each cause of action must be supported by sufficient, well-pleaded facts to be plausible on its face.[13] A claim is facially plausible "when the plaintiff pleads factual content that

---

[4] Compl. ¶ 16.
[5] The court uses the present tense language for Mr. Velarde's employment with Major Drilling because it draws the facts from the Complaint, but it also notes that Major Drilling terminated him in August 2025. *See* Mot. 3 n.2.
[6] Compl. ¶ 5.
[7] Mot. 3–8.
[8] Compl. ¶¶ 125–31.
[9] *Id.* ¶¶ 1, 81–109.
[10] *Id.* ¶¶ 132–170.
[11] *Id.* ¶¶ 132, 143, 155.
[12] Fed. R. Civ. P. 12(b)(6); *see Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).
[13] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14] In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, factual allegations are "accepted as true" and reasonable inferences are drawn "in the light most favorable to the nonmoving party."[15] However, "assertions devoid of factual allegations" that are nothing more than "conclusory" or "formulaic recitation[s]" of the law are disregarded.[16] "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement."[17]

**DISCUSSION**

Major Drilling moves to dismiss Mr. Velarde's claims on the basis that they lack the required specificity to plausibly state a claim for relief under the FLSA.[18] Major Drilling also asserts that Mr. Velarde's state law claims fail because he has not adequately pleaded that the Minnesota laws apply to him.[19]

## I.     The FLSA Claim

Mr. Velarde alleges that for at least the past three years, Major Drilling has violated the FLSA by requiring its hourly employees to regularly work more than forty hours a week without compensation.[20] Specifically, Mr. Velarde alleges that Major Drilling's off-the-clock policy, rounding policy, bonus pay scheme, and per diem policy violate the FLSA.[21] The court addresses

---

[14] *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).
[15] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).
[16] *Iqbal*, 556 U.S. at 678.
[17] *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (citation omitted).
[18] Mot. 1–2.
[19] *Id.* at 3.
[20] Compl. ¶ 129.
[21] *Id.* Mr. Velarde also asserts a "failure to maintain accurate payroll records under the MFLSA" cause of action in his Complaint. *See* Compl. ¶¶ 155–70. Because neither party addresses it in their briefing, however, the court declines to reach whether it should be dismissed.

each of Mr. Velarde's allegations regarding how Major Drilling has "shorted him on overtime" and whether they are sufficiently pleaded.[22]

### A.   Off-the-Clock

First, Mr. Velarde argues that Major Drilling should compensate him for his pre-shift activities, including "donning of safety gear and equipment, obtaining fuel, and meeting with employees coming off shift for briefing on the day's work."[23] Major Drilling responds that the allegations are not specific enough and that such activities are not integral to Mr. Velarde's primary duties.[24]

"Enacted in 1938, the FLSA established a minimum wage and overtime compensation for each hour worked in excess of 40 hours in each workweek."[25] To state a claim for violation of the FLSA's overtime provision, "a plaintiff merely must show that he is an employee who (a) worked more than forty hours per week, and (b) is either 'engaged in commerce or in the production of goods for commerce' or 'employed in an enterprise engaged in commerce or in the production of goods for commerce.'"[26]

### 1.   Degree of Specificity

The parties dispute whether the Complaint contains sufficient facts to state a plausible claim. At the outset, the court notes that *Iqbal*/*Twombly* plausibility governs FLSA claims—the standard is not higher or lower than what the Supreme Court has described for general pleading

---

[22] Pl.'s Opp'n to Mot. to Dismiss ("Opp'n") 8, ECF No. 24, filed Apr. 30, 2026.

[23] Compl. ¶ 47.

[24] Mot. 1–2.

[25] *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 31 (2014) (citing 29 U.S.C. § 201 *et seq.*).

[26] *Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1109 (10th Cir. 2019) (quoting 29 U.S.C. § 207(a)(1)). *See also Moreno v. Sonic Drive-In*, No. 2:25-cv-00372, 2026 WL 357650, at *5 (D. Utah Feb. 9, 2026) ("The facts required to prove an FLSA overtime claims are (1) that the employee worked more than 40 hours in a single workweek and (2) that the employer failed to pay overtime for the time worked in excess of 40 hours.").

standards. Nevertheless, the parties express differing views about what level of factual enhancement is sufficient. Major Drilling relies on out-of-circuit authorities—particularly from the Fourth and Ninth Circuits—while Mr. Velarde looks to district courts in this circuit.[27] Both parties cite the recent *Knutson v. Security National Mortgage Company* case from this court that compared the two approaches argued here.[28] In *Knutson*, the court held that "plaintiffs have adequate[ly] pled these facts by alleging that they 'regularly' worked over 40 hours a week without receiving overtime pay."[29] The court reasoned that having "[c]onsider[ed] these conflicting lines of authority, this court joins with the other district courts in this circuit that have rejected the heightened pleading standard adopted by the Fourth and Ninth Circuits."[30]

Here, the court likewise concludes that "a complaint need not specify either the dates on which the plaintiff worked over forty hours per week, or the number of hours worked over forty."[31] Mr. Velarde alleges that he "regularly" worked over forty hours in a week and that he "typically worked 7 days a week for approximately 12-16 hours a day 'on the clock' (84-112 hours a workweek)."[32] He further alleges that he is required to spend "approximately 45 minutes" every work day donning required safety gear, gather certain necessary equipment, and participating in mandatory shift change meetings on the premises.[33] He states his hourly rate as about "$30 an hour" and asserts that he has not been paid for any of the "off the clock" work.[34]

---

[27] Mot. 7–10; Opp'n 4–6. *See Hall v. DIRECTV, LLC*, 846 F.3d 757, 778 (4th Cir. 2017); *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638 (9th Cir. 2014).

[28] Opp'n 4–6; Def.'s Reply to Pl.'s Opp'n 3–4, ECF No. 30, filed May 28, 2026.

[29] *Knutson v. Sec. Nat'l Mortgage Co.*, No. 2:25-cv-00119, 2025 WL 3268469, at *4 (D. Utah Nov. 24, 2025).

[30] *Id. See Davis v. Steward Energy II, LLC*, No. cv 20-966, 2021 WL 1946406, at *3 (D.N.M. May 14, 2021) ("Considering this persuasive and extensive caselaw by Tenth Circuit district courts, including this Court, the Court will follow that caselaw rather than [31] *Guereca v. Cordero*, 487 F. Supp. 3d 1138, 1155 (D.N.M. 2020).

[31] *Guereca v. Cordero*, 487 F. Supp. 3d 1138, 1155 (D.N.M. 2020).

[32] Compl. ¶¶ 3, 39.

[33] Compl. ¶¶ 41-43.

[34] *E.g.*, Compl. ¶¶ 38, 48.

This suffices to plausibly plead that he worked more than 40 hours in at least one week but was not paid all required overtime pay.[35] In fact, this amount of factual enhancement seemingly meets that required in the out-of-circuit cases Defendant prefers.[36]

Defendant notes that the Tenth Circuit followed the Ninth Circuit in *Elhebawy v. Pritzker*, dismissing the plaintiff's overtime claim because the allegations that plaintiff was not paid "for hours worked between March 23, 2012 and November 15, 2012" were "insufficient to survive dismissal under Rule 12(b)(6)."[37] But the fact allegations there were sparse, omitting any mention of overtime, containing no averment at all of the number of hours worked in a week, and merely stating instead that the defendant "failed to pay Plaintiff for hours worked between March 23, 2012 and November 15, 2012" and that the defendant "continued to task Plaintiff with work-related activities and administrative matters even after her effective removal."[38] As noted above, the fact allegations in this case are more robust. *Elhebawy* is not contrary.

Finally, a recent opinion from this court, *Moreno v. Sonic Drive-In*, held that the plaintiff plausibly alleged an FLSA claim, stating that the plaintiff's allegations that she "was denied overtime pay . . . despite regularly working more than 40 hours per week" and "[pay]checks

---

[35] Compl. ¶ 3. *See e.g., Guereca*, 487 F. Supp. 3d at 1155 (holding that a plaintiff alleging that she "typically worked in excess of 40 hours" satisfied the pleading requirement for the FLSA claim).

[36] *See Hall v. DIRECTV, LLC*, 846 F.3d at 777 (all that is required are "sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek and that his or her employer failed to pay . . . . we emphasize that the standard that we adopt today does not require plaintiffs to identify a *particular* week in which they worked uncompensated overtime hours.")(emphasis in original) and *Landers v. Quality Commc'ns, Inc.*, 771 F.3d at 645 ("A Plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wage she believes she is owed, or any other facts that will permit the court to find plausibility . . . . we decline to make the approximation of overtime hours the sine qua non of plausibility for claims brought under the FLSA. After all, most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule is in the control of the defendants.").

[37] 663 F. App'x 658, 663 (10th Cir. 2016).

[38] *Id.*

showed [she] was working 86 hours biweekly when [she] was actually working 110-120" was "all [the plaintiff] needed to plead."[39] Similarly, Mr. Velarde alleges he has been denied overtime pay even though he typically works "'on the clock' (84-112 hours a workweek)"[40] and he is not compensated for his pre-shift duties, which take "approximately 45 minutes to an hour each workday."[41] These allegations provide a plausible factual basis that Mr. Velarde was denied overtime pay for at least one workweek if the pre-shift duties are indispensable and integral to Mr. Velarde's duties. The court turns to that issue next.

### 2. Compensability of Work

"The FLSA requires an employer to pay employees for their work, but it does not define what kinds of activities qualify as compensable work."[42] Congress narrowed the definition of work with the Portal-to-Portal Act that excludes "activities which are preliminary to or postliminary to said principal activity or activities" of an employee.[43] Thus, the court must determine whether the pre-shift duties Mr. Velarde describes may be compensable under the FLSA.

The Supreme Court "has consistently interpreted the term principal activity or activities to embrace all activities which are an integral and indispensable part of the principal activities."[44] This "inquiry does not turn on whether the employer requires the activity or whether the activity benefits the employer. Instead, the question is 'tied to the productive work that the employee is

---

[39] *Moreno*, 2026 WL 357650, at *5.
[40] Compl. ¶¶ 3, 39.
[41] Compl. ¶¶ 52, 55, 57
[42] *Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270, 1276 (10th Cir. 2020).
[43] *Busk*, 574 U.S. at 32 (quoting 29 U.S.C. § 254(a)).
[44] *Id.* at 33 (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29–30 (2005) (citation and internal quotation marks omitted)).

*employed to perform.*"[45] For example, in *Integrity Staffing Solutions, Inc. v. Busk*, the Supreme Court held that post-shift security screening for warehouse employees was not compensable under the FLSA because it was not integral nor indispensable to the employees' duties to retrieve products for shipment to Amazon customers.[46] The Court's analysis hinged on whether the employer "could have eliminated the screenings altogether without impairing the employees' ability to complete their work."[47] Following that logic, the Tenth Circuit has held that "employees who transport equipment without which well servicing could not be done[] are performing an activity which is so closely related to the work which they and the other employees perform[] that it must be considered an integral and indispensable part of their principal activities."[48]

Here, Mr. Velarde's principal activities for his position as a driller include "operating drills down to 5,000 feet, taking samples, pulling wire line, mixing mud and chemicals, and installing rods."[49] He alleges that he cannot perform these duties without donning safety gear and protective clothing, obtaining fuel, and meeting with employees coming off shift.[50] Thus, he has plausibly pleaded that these pre-shift activities are integral to his principal duties.

Major Drilling argues that Mr. Velarde must allege more facts about where Major Drilling requires its employees to don protective clothing and safety gear because in 2006 the Department of Labor states that "donning and doffing of required gear is within the continuous

---

[45] *Aguilar*, 948 F.3d at 1276 (quoting *Busk*, 574 U.S. at 36) (emphasis supplied)).

[46] *Busk*, 574 U.S. at 35–37.

[47] *Id.* at 35.

[48] *D.A. & S. Oil Well Servicing, Inc. v. Mitchell*, 262 F.2d 552, 555 (10th Cir. 1958); *cf. Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1289 (10th Cir. 2006) (finding that the activity of putting personal, nonspecialized equipment into a van was not compensable work).

[49] Compl. ¶ 40.

[50] *Id.* ¶ 6.

workday only when the employer or the nature of the job mandates that it take place on the employer's premises."[51] Defendant does not explain how this 2006 field assistance bulletin governs this case. And, in any event, Plaintiff alleges that these "off the clock" activities are required by Defendant to occur "on Major's (or its clients') premises."[52] Because Mr. Velarde has put Major Drilling on fair notice of what grounds he is asserting an overtime claim under the FLSA *and* asserted sufficient factual allegations under the Supreme Court's test for what constitutes compensable work, his claim that certain off-the-clock pre-shift activities violated FSA survives dismissal.[53]

### B.    Rounding Policy

Next, Mr. Velarde claims that Major Drilling's rounding policy violates the FLSA because it rounds hourly employees' time to the nearest quarter hour for Major Drilling's "own primary benefit and to the detriment of the [h]ourly [e]mployees."[54] Major Drilling responds that this claim is conclusory and lacks any factual basis.[55]

"Rounding is the practice of recording the employees' starting time and stopping time to the nearest [five] minutes, or to the nearest one-tenth or quarter of an hour, or to some other consistent time increment."[56] "Federal regulation permits rounding as long as 'it will not result, over a period of time, in failure to compensate the employees properly for all the time they have

---

[51] Mot. 12.

[52] Compl. ¶ 42.

[53] The court notes that Plaintiff occasionally argues that mere notice is enough. *See* Opp'n 1 ("But the federal rules establish a notice pleading standard."). Not so. While notice is absolutely necessary, it is not sufficient without enough factual enhancement to make the claim plausible, rather than merely possible.

[54] Compl. ¶ 60.

[55] Mot. 2; Reply 10.

[56] *Aguilar*, 948 F.3d at 1287 (citation and internal quotation marks omitted).

actually worked."[57] "Stated differently, a valid rounding policy must be 'neutral, both facially and as applied.'"[58] "It must allow for rounding both up and down, so that an employee is sometimes compensated for time not spent working, and sometimes not compensated for time spent working."[59]

For example, in *Aguilar v. Management & Training Corp.*, the Tenth Circuit reversed summary judgment on the detention officers' rounding claim and concluded that the policy was facially neutral but may not be neutrally applied.[60] The company had a ten-minute-adjustment rule that meant "an officer assigned to a 6 a.m. shift who clocks in at 5:51 a.m. and clocks out at 2:09 p.m. will be paid for eight hours" and "an officer who clocks in at 6:09 a.m. and out at 1:51 p.m. will also be paid for eight hours."[61] In other words, the officer who worked an additional 18 minutes received the same pay as the officer who worked 18 fewer minutes. Thus, the policy was facially neutral because it rounded up and down. But the Tenth Circuit also held that the policy was not neutrally applied because the officers presented evidence showing that "about 94% of the time, the officers were clocked in . . . for longer than their eight-hour shift. And a rounding policy that works in the employer's favor 94% of the time is probably not neutrally applied."[62]

Here, the Complaint does not explain how Major Drilling's rounding policy is not neutral—facially or as-applied. At most, the Complaint alleges that "Major [Drilling] automatically rounds" employees' "clock in and clock out punches to the nearest quarter hour" and requires hourly employees "to perform their normal job duties immediately upon clocking

---

[57] *Id.* at 1288 (citation and internal quotation marks omitted).
[58] *Id.* (quoting *Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1076 (9th Cir. 2016)).
[59] *Id.* (citation omitted).
[60] *Id.* at 1287–89.
[61] *Id.* at 1288.
[62] *Id.*

in."[63] Granted, *Aguilar* was decided on a motion for summary judgment, and evidence on the application of a policy is not required at this stage of the case. Even so, Mr. Velarde does not plead any factual support for his conclusory allegation that the policy is not neutral. He summarily alleges that the automatic rounding results in a "benefit" to Major Drilling and a "detriment" to hourly employees, but he fails to explain why.[64] Consequently, this aspect of the FLSA claim is dismissed for failure to state a claim.

### C.   Bonus Pay Scheme

Next, Mr. Velarde argues that Major Drilling's bonus structure violates the FLSA requirement that nondiscretionary bonuses be included in the regular rate for overtime calculations.[65] Specifically, he points to the Complaint's allegations that he received a referral bonus in 2025 after fulfilling specified criteria, but Major Drilling excludes such bonuses from regular rates of pay for overtime purposes.[66] In response, Major Drilling argues that Mr. Velarde inadequately pleaded the "bonus pay scheme" claim because the "Complaint doesn't allege facts that Velarde was eligible for and received any type of non-discretionary bonus."[67]

"The first step in many FLSA disputes is to determine an employee's regular rate."[68] This is because "[o]vertime hours must be compensated at a rate not less than one and one half times the regular rate at which the employee is employed."[69] "The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the

---

[63] Compl. ¶¶ 60–61.
[64] *Id.* ¶ 60.
[65] Opp'n 9.
[66] *Id.*
[67] Mot. 8–9; Reply 2.
[68] *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1304 (10th Cir. 2011).
[69] *Id.* (cleaned up) (quoting 29 U.S.C. § 207(a)(1)).

workweek, exclusive of overtime payments."[70] "Discretionary bonuses are exempt from the regular rate."[71]

Here, Mr. Velarde alleges that the referral bonus he received in 2025 was nondiscretionary, so Major Drilling violated the FLSA by failing to include it in his regular rate for overtime purposes.[72] However, the Complaint does not contain sufficient factual matter to support the allegation. Although Mr. Velarde describes the criteria required to qualify for the referral bonus, he does not allege that he fulfilled the criteria, nor does he provide basic facts such as the approximate amount of the bonus he allegedly received or the date on which he received it. Nor does he allege that he worked overtime during that particular time period. Some or all of this information would reasonably be in his possession. The Complaint lacks sufficient facts to plausibly state this claim under the FLSA.

### D.    Per Diem Policy

Next, Mr. Velarde alleges that Major Drilling's per diem payments are not reasonable reimbursement expenses but "merely additional wages" and should be included in hourly employees' regular rates of pay for overtime purposes.[73] Major Drilling argues that more is needed than this conclusory statement, such as how much the per diem was or whether it differed by employee or location.[74]

The FLSA requires certain per diem payments to be included in an employee's regular rate of pay for purposes of calculating overtime pay.[75] "The regular rate 'shall be deemed to

---

[70] *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 461 (1948).
[71] *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1252 (10th Cir. 2017) (citing 29 U.S.C. § 207(e)(3)).
[72] Compl. ¶¶ 76–78.
[73] *Id.* ¶¶ 69–72.
[74] Mot. 16.
[75] 29 U.S.C. § 207(e).

include all remuneration for employment paid to, or on behalf of, the employee,' subject to eight exceptions."[76] The relevant exception here excludes "reasonable payments for traveling expenses, or other expenses, incurred by an employee in furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment."[77] Whether a payment qualifies as reimbursement or compensation often hinges on whether it fluctuates with the number of hours worked.[78]

For example, in *Sharp v. CGG Land (U.S.) Inc.*, the Tenth Circuit rejected employees' argument that their daily meal expenses while working away from home should be included in their regular rate of pay.[79] The employees received $35 per diem as a reasonable meal allowance when they worked on remote job sites, and they "did not receive higher per diem payments after working longer hours."[80] The court distinguished the case from those cited by the employees on the basis that both cases "involve instances where employers tied per diem payments to the amount of hours that employees worked."[81]

Here, Mr. Velarde alleges that Major Drilling's per diems "are paid only for days they actually work and are merely additional wages."[82] The Complaint also alleges that the per diem payments "are not calculated to reasonably reimburse expenses" that Mr. Velarde and other

---

[76] *Sharp v. CGG Land (U.S.) Inc.*, 840 F.3d 1211, 1214 (10th Cir. 2016) (quoting 29 U.S.C. § 207(e)).

[77] 29 U.S.C. § 207(e)(2).

[78] *Sharp*, 840 F.3d at 1215–16.

[79] *Id.* at 1215.

[80] *Id.* 1215–16.

[81] *Id.* (citing *Newman v. Adv. Tech. Innovation Corp.*, 749 F.3d 33, 39 (1st Cir. 2014)); *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1042 (5th Cir. 2010)).

[82] Compl. ¶ 71.

hourly employees incur.[83] Yet Mr. Velarde does not support these allegations with any facts about the per diems, such as how much they are and what expenses they can be used to cover. With insufficient "underlying facts" about the per diem payments or "any factual enhancement," these allegations are too conclusory to survive dismissal.[84]

## II.    Minnesota State Law Claims

Mr. Velarde's remaining claims are brought under Minnesota statutes—the MPWA and the MFLSA.[85] The MPWA requires employers to pay all wages "at least once every 31 days . . . on a regular payday designated in advance by the employer . . . ."[86] And the overtime provision of the MFLSA states, "No employer may employ an employee for a workweek longer than 48 hours, unless the employee receives compensation for employment in excess of 48 hours in a workweek at a rate of at least 1-1/2 times the regular rate at which the employee is employed."[87]

Major Drilling argues that Mr. Velarde's Minnesota state law claims are "fatally lacking" in specificity, most notably because Mr. Velarde has not established that he worked or lived in Minnesota, such as by identifying "any actual dates" he was in Minnesota.[88] In the Complaint, Mr. Velarde alleges that he was employed by Major Drilling as a driller "in Minnesota from approximately February to June 2024."[89] He does not, however, specifically allege that he worked overtime, or more than 48 hours, in a workweek while in Minnesota. Instead, the Complaint alleges that Mr. Velarde "regularly works more than 40 hours in a week."[90] This

---

[83] *Id.* ¶ 70.
[84] *See Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (citation omitted).
[85] Compl. ¶¶ 132–70.
[86] Minn. Stat. § 181.101.
[87] *Id.* § 177.25.
[88] Mot. 8–11, 18–19; Reply 2, 9.
[89] Compl. ¶ 16.
[90] *Id.* ¶ 3.

allegation is insufficient for those claims since Minnesota law defines overtime as "more than 48 hours" in a workweek. Mr. Velarde also alleges that he "typically worked 7 days a week for approximately 12-16 hours a day 'on the clock' (84-112 hours a workweek)."[91] But he does not tie that allegation to the relatively short period of February to June 2024 that he worked in Minnesota.

Furthermore, "Minnesota law presumes its statutes do not apply extraterritorially."[92] "Under this presumption, even if a statute does not 'expressly exclude out-of-state' conduct, the Minnesota Supreme Court would not read it to include extraterritorial actions absent indication to the contrary."[93] Consequently, Mr. Velarde's failure to allege that he worked overtime during a specific time in Minnesota is fatal to these claims. Mr. Velarde needs to "allege more by way of factual content" than his statement that he was in Minnesota as a driller for Major Drilling from "approximately February to June 2024."[94] This, alone, does not "nudge his claim . . . across the line from conceivable to plausible."[95]

## ORDER

Accordingly, Major Drilling's motion to dismiss is GRANTED in part and DENIED in part.[96] The court DISMISSES WITHOUT PREJUDICE Plaintiff's rate-of-pay portions of the FLSA claim but allows the off-the-clock portion of the claim to proceed. Plaintiff's Minnesota claims are also DISMISSED WITHOUT PREJUDICE.

---

[91] *Id.* ¶¶ 3, 39.
[92] *Styczinski v. Arnold*, 141 F.4th 950, 956 (8th Cir. 2025).
[93] *Id.*
[94] *Iqbal*, 556 U.S. at 683.
[95] *Id.* (quoting *Twombly*, 550 U.S. at 570).
[96] ECF No. 21.

Signed July 15, 2026.

BY THE COURT

_____

David Barlow
United States District Judge